**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
RAYMOND BONILLA,                        :
                                        :
                    Plaintiff,          :
                                        :        Civil Action No. 15-6795(FLW)
        v.                              :
                                        :              **OPINION**
THE STATE OF NEW JERSEY, et al.,        :
                                        :
                    Defendants.         :
_____:

**WOLFSON**, **United States District Judge:**

This matter is before the Court upon a motion for summary judgment filed by Defendants Jones Farm, AgriIndustries, Commissioner Gary M. Lanigan (improperly named as Raymond Lanigan) ("Defendant Lanigan"), the Department of Corrections ("NJDOC"), and the State of New Jersey (collectively, the "Corrections Defendants"). ECF No. 23. Plaintiff Raymond Bonilla ("Plaintiff") opposes the motion. ECF No. 26. The Court has decided the motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Corrections Defendants' motion for summary judgment will be denied.

## BACKGROUND

This case arises out an injury that Plaintiff allegedly suffered while he was an inmate at Jones Farm, where he was assigned to perform services at the milk processing plant (the "Plant"). _See_ Compl. ¶¶ 9–10. Plaintiff alleges that he sustained a serious injury to his hand while operating a milk packing machine (the "Machine"). _Id._ at ¶ 18. Plaintiff further alleges that he was not properly trained on how to operate the Machine, was not adequately supervised

1

while operating the Machine, and that the Machine itself was not adequately maintained and was defective or dangerous. *Id.* at ¶¶ 19–20.

Except where otherwise noted, the following facts are undisputed. On September 11, 2014, Plaintiff reported to work at the Plant. Def.'s Statement of Material Facts ("Def.'s SOMF") at ¶ 2, ECF No. 23-2; Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp. SOMF") at ¶ 2, ECF No. 26-1. At his deposition, Plaintiff testified that, after reporting to work on September 11, he sustained injuries to his hand while attempting to unclog milk cartons that had become wedged in the Machine, causing it to jam. Deposition of Raymond Bonilla ("Bonilla Dep.") at 49:15-50:23; 53:23-54:18, ECF No. 26-1; Pl.'s Supp. Statement of Facts ("Pl.'s SSOF") at ¶ 4, ECF No 26-1; Def.'s Resp. to Pl.'s Supp. Statement of Facts ("Def.'s Resp. SSOF") at ¶ 4, ECF No. 27-2. Plaintiff testified that he turned off the Machine prior to attempting to unclog it by reaching for the jam. Bonilla Dep. at 51:7-52:20; 62:16-63:16. However, as Plaintiff was attempting to take out the clogged milk cartons, the Machine turned back on, severing the middle finger on his right hand and injuring his pointer finger. Pl.'s SSOF at ¶ 5; Def.'s Resp. SSOF at ¶ 5. Plaintiff did not call for his supervisor, Jeffrey Halter, to help unclog the Machine prior to attempting to unclog it himself. Def.'s SOMF at ¶ 17; Pl.'s Resp. SOMF at ¶ 17.

Plaintiff first operated the Machine on September 10, 2016, one day before his injury. Def.'s SOMF at ¶ 11; Pl.'s Resp. SOMF at ¶ 11. On that date, Plaintiff was assigned to the Machine as a substitute for another operator and operated the Machine without incident. Def.'s SOMF at ¶ 11; Pl.'s Resp. SOMF at ¶ 11. Everyone who had worked on the Machine before Plaintiff had received training on how to operate the Machine. Pl.'s SSOF at ¶ 10; Def.'s Resp. SSOF at ¶ 10. Plaintiff's supervisor, Halter, was responsible for training inmates on how to do

their jobs properly and safely.  Pl.'s SSOF at ¶ 24; Def.'s Resp. SSOF at ¶ 24.  After Plaintiff sustained his injury, Halter wrote Plaintiff a disciplinary charge for not following safety procedures.  Pl.'s SSOF at ¶ 15; Def.'s Resp. SSOF at ¶ 15.

Defendants maintain an Inmate Safety Training Receipt Form (the "Form") for inmates to sign after they have been trained on a particular piece of equipment.  Pl.'s SSOF at ¶ 11; Def.'s Resp. SSOF at 11.  Defendants do not know whether the Form existed and was in use at the time of Plaintiff's injury.  Deposition of Jeffrey Halter ("Halter Dep.") at 39:18-25.  It is undisputed, however, that, if the Form existed at the time, Plaintiff would have completed the Form after receiving training on the Machine.  Pl.'s SSOF at ¶ 13; Def.'s Resp. SSOF at ¶ 13.  Nevertheless, during discovery for the present action, Defendants failed to produce an Inmate Safety Training Receipt Form for the Machine with Plaintiff's signature.  Pl.'s SSOF at ¶ 14; Def.'s Resp. SSOF at 15.

Certain other facts remain in dispute.  The parties dispute whether Plaintiff was ever trained on the Machine, and whether Halter was in the building at the time of Plaintiff's injury.  Pl.'s SSOF at ¶¶ 6, 9, 23; Def.'s Resp. SSOF at ¶¶ 6, 9, 23.  The parties also dispute whether Plaintiff was ever specifically told not to stick his hands in the Machine.  Pl.'s Resp. SOMF at ¶ 19.  Plaintiff testified that, based on his experience, he thought that he should clean out a clog in the Machine himself.  Bonilla Dep. at 62:16–62:22.  The parties also dispute whether Defendants were aware of other similar incidents involving injuries to workers.  Pl.'s SSOF at ¶ 22; Def.'s Resp. SSOF at ¶ 22.  Additionally, Plaintiff claims that there was duct tape covering a sensor on the Machine at the time of the incident.  Bonilla Dep. at 69:4–69:13.  Halter testified that there had never been duct tape on the Machine.  Halter Dep. at 31:13–31:18.

Plaintiff's Complaint was originally filed in state court, and was removed to this Court on November 11, 2015. *See* ECF No. 1-3. The Complaint contains three counts against all Defendants, including the Corrections Defendants: (1) Count I alleges a state law claim of Negligence against all Defendants; (2) Count III alleges a state law claim of Willful, Wanton, Outrageous, and Reckless Conduct against all Defendants; and (3) Count IV alleges that all Defendants violated 42 U.S.C. § 1983 by failing to train or supervise staff and inmates in connection with the Machine, and failing to establish and maintain adequate safety procedures. Compl. ¶¶ 9-24.[1]

On May 10, 2016, the Court granted the Corrections Defendants' motion to dismiss Count IV of the Complaint. *See* ECF Nos. 12-13. The Court dismissed Count IV of the Complaint with prejudice against the State of New Jersey, the NJDOC, Jones Farm, and AgriIndustries, and Defendant Lanigan is his official capacity. *Id*. The Court directed Plaintiff to seek leave to file an Amended Complaint if he sought to bring personal capacity claims against Defendant Lanigan. *Id.* Plaintiff did not do so. Only state law claims remain. The parties have since engaged in discovery, and the Corrections Defendants filed the present motion for summary judgment. The Court now considers the Corrections Defendants' motion.

## **LEGAL STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the

---

[1] Plaintiff did not include a "Count II" in the Complaint.

suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson,* 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson,* plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir. 1999). There can be "no

genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir. 1992).

## DISCUSSION

As a threshold matter, Plaintiff has not sought leave of this Court to amend his Complaint to bring any § 1983 claims against Defendant Lanigan in his personal capacity. Accordingly, the Court need only address the remaining state law claims raised against the Corrections Defendants, contained in Counts I and III of the Complaint. The Court retains supplemental jurisdiction over those claims, pursuant to 28 U.S.C. § 1367.

## I.     Count I:  Negligence

In Count I, Plaintiff brings a claim for negligence, pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1, *et seq*. As the parties do in their briefs, the Court construes Count I as including two claims:  (A) one claim related to the allegedly dangerous or defective condition of the Machine; and (B) a second claim for negligent training or supervision. At the outset, the parties dispute which standard for negligence liability under the NJTCA should apply to Plaintiff's claim. Defendants argue that Plaintiff's negligence claim, insofar as it alleges a dangerous or defective condition, is governed by the "palpably unreasonable" standard codified at N.J.S.A. § 59:4-2.  Plaintiff argues that his entire negligence claim should be governed by the ordinary negligence standard codified at N.J.S.A. § 59:2-2.  As explained below, Defendants have correctly identified the applicable standard.

### A.     Dangerous Condition Claim

Under the NJTCA, N.J.S.A. § 59:2-2 sets forth the general rule of vicarious liability for a public entity, while N.J.S.A. § 59:4-2 provides the rule for liability for a public entity with regard to any dangerous condition of public property. *Ogborne v. Mercer Cemetery Corp.*, 197 N.J. 448, 452 (2009). Specifically, "N.J.S.A. 59:2–2 governs a plaintiff's cause of action when it turns on whether a public employee was ordinarily negligent in undertaking the action that caused the plaintiff's injury." *Id.* at 457. N.J.S.A. § 59:2–2 provides:

> a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

> b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

N.J.S.A. § 59:2–2.

By contrast, N.J.S.A. § 59:4-2 "states that a public entity will only be liable for injuries resulting from a dangerous condition of property created by an employee's negligence if the entity acted in a palpably unreasonable manner in failing to protect against the condition." *Ogborne*, 197 N.J. at 458. That provision provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

> > a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

> > b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

N.J.S.A. § 59:4-2.

Here, Plaintiff's claim plainly relates to the dangerous or defective condition of public property, the Machine, located on public property, Jones Farm, which dangerous or defective condition is alleged to have been caused by a public employee's negligence. *See* Compl. ¶ 20 ("The machine which the Plaintiff was assigned was in a dangerous and/or defective condition due to the failure of the Defendants . . . to properly maintain, service or test the equipment."). Plaintiff contends that he turned off the Machine prior to attempting to unclog it by reaching for the jam, but, as he was attempting to take out the clogged milk cartons, the Machine turned back on, severing the middle finger of his right hand and injuring his pointer finger. *See* Bonilla Dep. at 51:7-52:20; 62:16-63:16; Pl.'s SSOF at ¶ 5; Def.'s Resp. SSOF at ¶ 5. The Court therefore rejects Plaintiff's argument that the ordinary negligence standard, set forth in N.J.S.A. § 59:2-2, applies to Plaintiff's dangerous or defective condition claim, finding instead that the "palpably unreasonable" standard in N.J.S.A. § 59:4-2 governs that claim.

This Court's holding is supported by the New Jersey state courts' interpretation of the NJTCA. In *Ogborne*, for example, the Supreme Court of New Jersey was tasked with determining whether to apply the NJTCA's ordinary negligence standard, N.J.S.A. § 59:2–2, or the "palpably unreasonable" standard, N.J.S.A. § 59:4–2. 197 N.J. at 457. In that case, the plaintiff brought an action in tort against the defendant-city, alleging that she fractured her tibia while attempting to traverse a brick wall to exit a city park, inside of which she had become trapped after a city employee locked the gates to the park several hours before the park was scheduled to close. *Id.* at 453-54. As a preliminary matter, the court noted that the NJTCA should be read in favor of "providing broad immunity," and thus, "when the facts are reasonably debatable as to whether a public employee's act or failure to act created a dangerous condition of

8

property, and that condition of property causes an injury, the higher standard of palpably unreasonable conduct in N.J.S.A. § 59:4-2 operates to trump the ordinary negligence standard, which otherwise applies when the act of a public employee causes an injury." *Id.* at 459-60. Accordingly, the Court held that the heightened "palpably unreasonable" standard applied in that case, reasoning as follows:

> It is obvious that if plaintiff had not been in the Park, the employee's conduct in locking the gates would not have created a dangerous condition of property. It was the combination of plaintiff being in the Park and the City's employee locking the gates that rendered the Park potentially dangerous to plaintiff. Under those conditions, it is reasonably debatable that the locking of the gates rendered the Park a dangerous condition because plaintiff was unable to walk out in the same manner that she entered the Park. Consequently, we agree with the Appellate Division that the proper legal standard for judging plaintiff's claim against the City should have been the combined dangerous condition of public property and "palpably unreasonable" standard pursuant to N.J.S.A. 59:4–2, and not the ordinary negligence standard in N.J.S.A. 59:2–2.

*Id.* at 461.

Similarly, here, the facts are reasonably debatable as to whether Defendants' act of operating and reaching into the Machine caused its dangerous or defective condition. Stated differently, Plaintiff's allegations and the undisputed facts support that it was likely the combination of Plaintiff operating and attempting to unclog the Machine, and Defendants' maintenance of the Machine, that rendered the Machine dangerous. Under these circumstances, just as the New Jersey Supreme Court in *Ogborne*, this Court concludes that the more stringent "palpably unreasonable" standard set forth in N.J.S.A. § 59:4-2 is applicable to this case.

Having found that N.J.S.A. § 59:4-2 governs this case, the Court must determine whether summary judgment is appropriate on Plaintiff's claim alleging a dangerous condition of property. In order to establish public entity liability due to a dangerous condition of property, a plaintiff must demonstrate that:

(1) That the property was in a dangerous condition at the time of the injury,

(2) That the injury was proximately caused by the dangerous condition,
(3) That the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,
(4) That either,

> a. A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition, or
> b. A public entity had actual or constructive knowledge of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition, and

(5) The action the entity took to protect against the condition or the failure to take such action was palpably unreasonable.

*See* N.J.S.A. § 59:4-2.  In this case, Defendants argue that Plaintiff has failed to establish that:

(1) the Machine was in a dangerous condition at the time of the injury; (2) Defendants had actual or constructive knowledge of the allegedly dangerous condition; and (3) the actions taken by Defendants to protect against the dangerous condition, or Defendants' failure to take such action, were palpably unreasonable.  The Court will address each of those arguments in turn.

### 1.    *Dangerous Condition*

First, Defendants argue that Plaintiff cannot establish that the Machine was in a dangerous condition, as defined under N.J.S.A. § 59:4-1, at the time of Plaintiff's injury. Specifically, Defendants argue that Plaintiff cannot establish that the Machine was in a dangerous condition, because:  (i) he has not proffered a liability expert to opine on what aspects of the Machine or the surrounding premises constituted a physical defect; (ii) the alleged failure to provide Plaintiff with proper supervision or training does not constitute a dangerous condition of property; (iii) Plaintiff has identified no defects in the Machine itself; and (iv) Plaintiff's injury was caused by placing his hand into the Machine, rather than by a demonstrable defect in the Machine or its surroundings.  Conversely, Plaintiff maintains that the Machine was in a dangerous condition at the time of his injury, because duct tape covered the Machine's sensors.

To establish a dangerous condition of property, a plaintiff must show that the property in question created a "substantial risk of injury when such property is used with due care in a matter in which it is reasonably foreseeable that it will be used." N.J.S.A. § 59:4-1(a). The term "substantial risk" does not include "minor, trivial, or insignificant" risks. *Kolitch v. Lindedahl*, 100 N.J. 485, 493 (1985). The phrase "used with due care" is understood by courts to mean "objectively reasonable" use. *Garrison v. Twp. of Middletown*, 154 N.J. 282, 291 (1998). "Public property" is defined, in pertinent part, as "real or personal property owned or controlled by the public entity." N.J.S.A. 59:4–1(c). In *Vincitore ex rel. Vincitore v. New Jersey Sports & Exposition Auth.*, 169 N.J. 119 (2001), the Supreme Court of New Jersey summarized the "dangerous condition" analysis as follows:

> *Garrison* thus describes a three-part analysis. The first consideration is whether the property poses a danger to the general public when used in the normal, foreseeable manner. The second is whether the nature of the plaintiff's activity is "so objectively unreasonable" that the condition of the property cannot reasonably be said to have caused the injury. The answers to those two questions determine whether a plaintiff's claim satisfies the Act's "due care" requirement. The third involves review of the manner in which the specific plaintiff engaged in the specific activity. That conduct is relevant only to proximate causation, N.J.S.A. 59:4-2, and comparative fault, N.J.S.A. 59:9-4. Id. at 292, 712 A.2d 1101.

169 N.J. at 126.

Ultimately, "[w]hether property is in a 'dangerous condition' is generally a question for the finder in fact." *Id.* at 123. Accordingly, the critical question for the purposes of the instant motion is whether a reasonable factfinder could conclude that the Machine was in a dangerous condition at the time of Plaintiff's injury.

Here, Plaintiff has raised a genuine dispute of material fact as to whether the Machine constitutes a dangerous condition of property. Plaintiff testified that Defendants placed duct tape over a sensor on the Machine, so the Machine would not turn off when the door to the Machine

was open.[2]  Bonilla Dep. at 70:9–71:2.  By contrast, Halter testified that there had never been duct tape on the Machine.  Halter Dep. at 31:13–31:18.  Plaintiff also testified that he turned the Machine off before attempting to unclog the Machine.  Bonilla Dep. at 51:19–25.  A reasonable factfinder could conclude that covering a safety sensor with duct tape, enabling the Machine to function when it otherwise should not have, poses a substantial risk of injury to someone using the Machine in a normal, foreseeable manner.  Because there is a dispute of material fact as to whether the safety sensor was in fact covered, the Court cannot grant summary judgment on Plaintiff's claim.

Additionally, the Court cannot find, as a matter of law, that Plaintiff's conduct in attempting to unclog the Machine with his hand was "'so objectively unreasonable' that the condition of the property cannot reasonably be said to have caused the injury." *Vincitore*, 169 N.J. at 126.  To that end, a dispute of fact exists regarding whether Plaintiff was provided with safety training and whether Plaintiff was specifically told not to stick his hands in the Machine. A reasonable factfinder could conclude that it was not objectionably unreasonable for Plaintiff to attempt to unclog the Machine himself, after it had been turned off, and, thus, that Plaintiff's injury was caused by the dangerous condition of the Machine, rather than Plaintiff's own actions.

---

[2] Additionally, despite not raising the issue in their original motion, Defendants argue in their reply brief that Plaintiff also cannot satisfy the second element, proximate cause.  Defendants argue that because Plaintiff testified that he turned off the Machine prior to sustaining his injuries, the Machine must have somehow turned back on in order to injure Plaintiff.  Thus, Defendants argue that Plaintiff cannot claim that obstructed sensors caused Plaintiff's injuries. While it is not clear that the Court should consider this argument made for the first time in a reply brief, the Court is unpersuaded.  Regardless of how the Machine was turned back on, Plaintiff has presented evidence that but-for the sensors being obstructed, the Machine would not have run if a door was open.  Halter Dep. at 30:1–30:6.  Accordingly, a reasonable jury could find that the Machine would not have run but-for the presence of duct tape obstructing the sensors, and therefore, that the obstruction proximately caused Plaintiff's injuries.

While Defendants attempt to rely on *Hawes v. New Jersey Dep't of Transp.*, 232 N.J. Super. 160 (Law. Div.), *aff'd*, 232 N.J. Super. 159 (App. Div. 1988) and *Speziale v. Newark Hous. Auth.*, 193 N.J. Super. 413 (App. Div. 1984), for the proposition that Plaintiff's actions constitute a lack of due care, precluding Plaintiff from establishing a dangerous condition, those cases are inapposite. In *Hawes*, plaintiff, the administratrix of the estate of a decedent who was struck and killed by a train as he attempted to cross a railroad track, alleged that the defendants allowed a dangerous condition to exist on the right of way of a railroad, "because they failed to erect fences or take other steps to prevent pedestrians from crossing the tracks, despite knowledge that the area in question was one regularly used by trespassers." 232 N.J. Super. at 161. The defendants moved for summary judgment, arguing that the property at issue was only dangerous because the plaintiff failed to exercise due care in crossing the tracks. *See id.* The court held that the property did not constitute a dangerous condition, and thus granted the motion for summary judgment, reasoning as follows:

> [I]t is clear to this Court that if a person were to use the defendant's property with due care, he would encounter no substantial risk of harm. Common sense dictates that a person using due care would make certain no trains were approaching before walking across a railroad track. Exercising even a minimum of care, a person should be able to eliminate any chance of being hit by a train. Accordingly, NJT's property did not constitute a dangerous condition.

*Id.* at 164.

Similarly, in *Speziale*, the plaintiff brought a tort action against the defendant housing authority after she slipped on a puddle of water that had gathered in a "pit" at the entranceway of the complex's laundry room. *See* 193 N.J. Super. at 415. The plaintiff testified that, as she walked through the rain to retrieve her laundry from the laundry room, she "noticed that there were approximately two or three inches of water in the pit and that a drain in the floor was 'bubbling,'" and that these conditions did not exist during her initial trip to the room. *See id.*

The Appellate Division held that the plaintiff "failed to sustain her burden of proving that the condition of the property presented a substantial risk of injury when used with due care." *Id.* at 417. The court reasoned as follows:

> There are situations where the mere use of the property at all, absent the emergent need to do so, in itself constitutes a lack of due care. A person in plaintiff's position here could have been reasonably expected to wait until the water condition abated, or to have sought assistance. Thus, the condition of the property did not create "a substantial risk of injury when ... used with due care in a manner in which it is reasonably foreseeable that it will be used" within the intendment of N.J.S.A. 59:4-1.

*Id.* The court noted, however, that its holding should not be interpreted as creating a bright-line rule that if a "plaintiff is contributorily negligent, a public entity will thereby automatically obtain immunity under *N.J.S.A.* 59:4-2 for injury caused by a condition of its property." *Id.* at 418.

Here, unlike in *Hawes* and *Speziale*, the Court cannot conclude that if a person were to use Defendants' property with due care, he would encounter no substantial risk of harm. To the contrary, accepting Plaintiff's allegations as true, the duct tape covering the Machine's sensors prevented the Machine from shutting down in the event a door was opened, presenting a substantial risk of harm even where the Machine was used in a foreseeable manner. Whether and to what extent Plaintiff may have been contributorily negligent in causing his own injury is a question for the jury. However, in light of the evidence proffered by Plaintiff, the Court cannot conclude, as a matter of law, that Plaintiff's injuries were caused by his own failure to exercise due care, rather than by a dangerous condition. Accordingly, a reasonable factfinder could conclude that the Machine constituted a dangerous condition of public property, and Defendants' motion for summary judgment on this basis is denied.

### 2. *Actual or Constructive Knowledge*

Second, Defendants argue that Plaintiff has failed to allege sufficient facts for a reasonable juror to conclude that Defendants had actual or constructive knowledge of the allegedly dangerous condition prior to Plaintiff's injury. In that connection, Defendants maintain that Plaintiff has not produced any evidence that, prior to Plaintiff's injury, the Machine malfunctioned as a result of duct tape being placed over the sensors, or that Defendants were aware of any prior complaints or injuries related to the Machine.

In opposition, Plaintiff argues that Defendants had actual or constructive knowledge of the dangerous condition of the Machine. Plaintiff testified that "Pat," one of Plaintiff's supervisors working for Defendants, had told him that multiple other inmates had lost fingers or hands while operating the Machine. Bonilla Dep. at 87:6–87:25. Plaintiff also testified that Pat knew about the duct tape on the sensor, and that the duct tape was put in place to prevent the Machine from shutting down. *Id.* at 70:12–71:2.

Actual knowledge can be shown by proving that the public entity "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. § 59:4-3(a). Constructive knowledge requires a plaintiff to show that "the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. § 59:4-3(b).

Here, drawing all inferences in favor of Plaintiff, the non-moving party, the Court holds that there is sufficient evidence upon which a reasonable jury could conclude that Defendants had actual knowledge of the alleged dangerous condition of the Machine. There are genuine factual disputes as to both whether Defendants, through Plaintiff's supervisor, knew that duct

tape covered the Machine's sensors, as well as to whether Defendants had knowledge of complaints or injuries similar to Plaintiff's caused by the Machine.  To that end, although Defendants claim that Plaintiff has produced no evidence demonstrating that Defendants were aware of prior complaints that the Machine had malfunctioned, Plaintiff testified that "Pat" admitted that another employee injured his hand while operating the Machine.[3]  Bonilla Dep. at 87:6–87:25.  Accordingly, since a reasonable jury could find that Defendants had actual knowledge of the alleged defects creating a dangerous condition on the Machine, Defendants' motion for summary judgment on this basis is denied, and the Court turns to whether Defendants' failure to remedy those conditions was palpably unreasonable.[4]

### 3.    *Palpable Unreasonableness*

Finally, to abrogate municipal immunity under the NJTCA, Plaintiff must also demonstrate that the action Defendants took to protect against the dangerous condition of the

---

[3] While Defendants argue that Plaintiff has only presented hearsay evidence to support his claim that Defendants were aware of similar complaints, "the rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are *capable of being admissible at trial*. In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial. The proponent need only 'explain the admissible form that is anticipated.'" *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238–39 (3d Cir. 2016) (quotations omitted) (emphasis in original). Here, Defendants have not provided a basis for this Court to determine that Plaintiff's proffered evidence is not capable of being admissible at trial or that Plaintiff's supervisor would be otherwise unavailable to testify at trial.  Indeed, Plaintiff has identified the declarant by name, and as an employee at one of Defendants' facilities. Thus, it is proper on summary judgment for the Court to consider Plaintiff's testimony that Pat told him about similar injuries sustained while other employees were using the Machine.

[4] The Court notes that, to satisfy the fourth element under § 59:4-2, a Plaintiff must demonstrate actual or constructive knowledge *or* that a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition.  *See* N.J.S.A. § 59:4-2.  Defendants do not challenge the sufficiency of the evidence on the latter prong.

Machine, or Defendants' failure to protect against that condition, was palpably unreasonable. N.J.S.A. § 59:4-2.

While the NJTCA does not explicitly define "palpably unreasonable," the Supreme Court of New Jersey has interpreted the phrase to mean "more than ordinary negligence, and impose[s] a steep burden on a plaintiff." *Coyne v. State, Dep't of Transp.*, 182 N.J. 481, 493 (2005). A public entity's actions are palpably unreasonable when its behavior "'is patently unacceptable under any given circumstances.'" *Id.* (quoting *Kolitch v. Lindedahl*, 100 N.J. 485, 493 (1985)). For a public entity to act in a palpably unreasonable manner, "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." *Id.* While in certain cases, "the question of palpable unreasonableness may be decided by the court as a matter of law," *Maslo v. City of Jersey* City, 346 N.J. Super. 346, 350 (App. Div. 2002), whether a defendant's conduct is palpably unreasonable is generally a question for the factfinder. *Vincitore*, 169 N.J. at 129.

In this case, I cannot determine, based on the summary judgment record before me, whether Defendants should have done more to ensure that the Machine was being operated in a safe condition. In that connection, Plaintiff alleges that Defendants placed duct tape over a sensor on the Machine, preventing the Machine from turning off when a door was opened. Bonilla Dep. at 70:12–71:2. Moreover, it is unclear whether Defendants took any steps to prevent employees, such as Plaintiff, from attempting to unclog the Machine. Whether Defendants' actions in responding to the dangerous condition of the Machine were "patently unacceptable under any given circumstances," such that "it must be manifest and obvious that no prudent person would approve of its course of action or inaction," *Kolitch*, 100 N.J. at 493, is,

therefore, properly a question for the factfinder. Defendants' motion for summary judgment on this basis, and therefore also on Plaintiff's dangerous condition claim, is denied.

**B.    Negligent Failure to Train or Supervise**

Next, the Court turns to Plaintiff's claims that Defendants negligently failed to train Plaintiff on how to operate the Machine, and negligently failed instill proper procedures for supervising employees using the Machine.

"Under New Jersey law, liability may be imposed on an employer who fails to perform its duty to train and supervise its employees." *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010) (citing *Tobia v. Cooper Hosp. Univ. Med. Ctr.*, 136 N.J. 335, 346 (1994)). Because a claim for failure to train or supervise is a negligence claim, a plaintiff must demonstrate that: "(1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Stroby*, 754 F. Supp. 2d at 721 (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)).

**1.    Negligent Training**

With respect to Plaintiff's claim for negligent training, Defendants argue that Plaintiff has failed to establish that Defendants breached a duty of care owed to Plaintiff, and that Defendants' breach was the proximate cause of Plaintiff's injury. Specifically, Defendants contend that Plaintiff has failed to proffer an expert opinion on Defendants' standard of care in training its employees, as required to prove such an element of the claim, and that regardless of the amount of training provided Plaintiff, a defective stop mechanism or other condition presents a superseding cause in Plaintiff's injury. I disagree.

As a preliminary matter, the Court finds that Plaintiff was not required to present expert testimony on the requisite standard of care to which Defendants are held in training their employees. The need for expert testimony in a tort action depends on "whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." *Scully v. Fitzgerald*, 179 N.J. 114, 127 (2004) (citation omitted). However, "expert testimony is not necessary when the subject can be understood by jurors utilizing common judgment and experience." *Campbell v. Hastings*, 348 N.J. Super. 264, 270 (App. Div. 2002). "[T]here is no general rule or policy requiring expert testimony on the standard of care in tort actions," and "the necessity for expert testimony" is left to the trial judge. *Dixon v. CEC Entm't, Inc.*, No. 2010-06T1, 2008 WL 2986422, at *19 (N.J. Super. Ct. App. Div. Aug. 6, 2008).

Here, the Court finds that the level of care to which Defendants must be held in training their employees on how to operate the Machine is not so esoteric as to require expert testimony — it concerns only the fairly mundane question of the care necessary in dealing with a large, mechanical device. To that end, the amount of training Defendants were required to provide their employees is a subject that can be understood by jurors using common judgment and experience. Accordingly, Plaintiff was not required to proffer expert testimony regarding the duty of care Defendants needed to exercise in training their employees on how to operate the Machine.

Additionally, the record is replete with evidence from which a reasonable juror could conclude that Defendants breached their duty of care to Plaintiff, and that breach proximately caused Plaintiff's injuries. In that connection, a genuine dispute of fact exists regarding whether Defendants breached their duty, because while Defendants require inmates to sign an Inmate

Safety Training Receipt Form after they have been trained on equipment, Pl.'s SSOF at ¶ 11; Def.'s Resp. SSOF at 11, Defendants did not produce a Form with Plaintiff's signature in this case, Pl.'s SSOF at ¶ 14; Def.'s Resp. SSOF at 15.  Moreover, the critical fact of whether the Form was in fact in use at the time of Plaintiff's injury remains uncertain.  Halter testified that he was unsure if the Form was in use at the time of Plaintiff's accident.  Halter Dep. at 39:18-25. Moreover, the parties dispute whether Plaintiff was ever trained on the Machine.  Pl.'s SSOF at ¶¶ 6, 9; Def.'s Resp. SSOF at ¶¶ 6, 9.  The factual questions are sufficient to submit to the jury the issue of whether Defendants breached their duty of care.

Moreover, a reasonable factfinder could conclude that Defendants' breach of their duty to properly train Plaintiff on how to operate the Machine proximately caused Plaintiff's injuries. "Proximate causation is a concept that is vague and subject to interpretation." *Worrall v. City of Atl. City*, No. 11-3750, 2014 WL 980575, at *5 (D.N.J. Mar. 13, 2014) (citing *Conklin v. Hannoch Weisman*, 145 N.J. 395, 416 (1996)).  To establish proximate causation in a negligent training case, "a plaintiff must prove that his or her injury would not have happened 'but for' a defendant's negligence in training its employees, and that improper training was a substantial factor in bringing about a plaintiff's injury." *Id.* at *5.  Here, Plaintiff has presented sufficient evidence for a factfinder to conclude that had Plaintiff been properly trained, he would not have reached into the Machine to unclog it, and thus, his injuries would not have occurred but for the lack of training.  *See Denisco v. Boardwalk Regency Corp.*, No. 10-3612, 2013 WL 179484, at *5 (D.N.J. Jan. 16, 2013) ("She also stated that had she known she was not permitted to use lancets, she would not have used them, permitting a jury to conclude that deficient training was a proximate cause of Plaintiffs' injuries.").

In sum, the evidence presented, with all inferences drawn in Plaintiff's favor, is sufficient for a reasonable jury to find that Defendants negligently trained Plaintiff on operating the Machine. Taking Plaintiff's testimony as true, Defendants never trained Plaintiff on how to operate the Machine, and never instructed him on the proper procedure in the event the Machine became jammed. *See* Bonilla Dep. at 41:25-42:7; 46:1-2. Plaintiff also stated that he was never explicitly told not to reach into the Machine, permitting a jury to conclude that deficient training was a proximate cause of Plaintiff's injuries. These issues of fact are for a jury to decide, and thus, the Court will deny summary judgment on the issue of negligent training.

### 2. *Negligent Supervision*

Under New Jersey law, "employers have a duty to supervise employees, and liability may be imposed if an employer fails to perform that duty." *Worrall*, 2014 WL 980575 at *3. Like the tort of negligent training, negligent supervision "requires proof of duty, breach, causation, and injury." *Denisco*, 2013 WL 179484 at *5; *Dixon*, 2008 WL 2986422 at *18. Defendants challenge Plaintiff's negligent supervision claim on the same bases that they challenge his negligent training claim; namely, that plaintiff has failed to demonstrate that Defendants breached the applicable duty of care, and has failed to demonstrate that Defendants' breach proximately caused Plaintiff's injuries.

As above, the Court notes that the applicable duty of supervision Defendants owed Plaintiff is not a matter so esoteric as to require expert testimony. Additionally, Plaintiff has raised a genuine dispute of material fact regarding whether Defendants breached that duty. Importantly, the parties dispute whether Plaintiff's supervisor, Halter, was in the building at the time of Plaintiff's injury. Pl.'s SSOF at ¶ 23; Def.'s Resp. SSOF at ¶ 23. Plaintiff testified that while Halter was responsible for ensuring that inmates were properly and safely performing their

jobs, he was not in the building on the day of Plaintiff's injury. Bonilla Dep. at 62:16-64:7. This evidence raises a genuine issue of material fact as to whether Plaintiff was properly supervised while operating the machine, whether Defendants knew or should have known that the machine could jam, and whether Defendants were negligent for permitting Plaintiff to use the machine under those conditions. Because Plaintiff's negligent supervision claim is dependent on factual issues regarding the level of supervision provided, as well as Defendants' knowledge of Plaintiff's use of the Machine, summary judgment on the issue of negligent supervision will be denied.

In sum, because genuine issues of material fact remain as to whether Defendants negligently failed to train and supervise Plaintiff, Defendants' motion for summary judgment on those claims is denied.

## II.    Count III:  Willful, Wanton, Outrageous, and Reckless Conduct

In Count III, Plaintiff brings a claim for Willful, Wanton, Outrageous, and Reckless Conduct. In their briefs, Defendants make no attempt to cite a legal standard or argue that they are entitled to summary judgment on this claim. As Defendants do not appear to challenge Count III in their motion, the Court has no basis to enter summary judgment on Count III.

## <u>CONCLUSION</u>

For the reasons discussed above, the Corrections Defendants' motion for summary judgment is denied. However, the Court declines to further exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 444 (3d Cir. 1997) (the decision to decline to exercise supplemental jurisdiction over a plaintiff's remaining state law claims "is committed to the sound discretion of

the district court.").  Rather, the Court will remand this case back to state court for trial.  An

appropriate order will follow.


Dated: July 19, 2017                                    /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        United States District Judge